# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY TODD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　Defendants. | Case No. 1:12-cv-01003-LJO-DLB PC<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION**<br><br>ECF No. 13<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

**I.     Background**

Plaintiff Michael Anthony Todd ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. On June 21, 2012, Plaintiff filed his Complaint. ECF No. 1. On September 11, 2012, Plaintiff filed his First Amended Complaint, which is presently before the Court for screening. ECF No. 13.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II.     Summary of First Amended Complaint

Plaintiff is incarcerated at California State Prison-Corcoran ("CSP-Cor") in Corcoran, California, where the events giving rise to this action occurred. Plaintiff names as Defendants: CDCR; CSP-Cor; correctional lieutenant D. J. Ruiz; correctional officers Mayo, Mussellman, and D. Berna; correctional captain J. C. Smith; Chief Deputy Warden C. Gipson; Chief of Inmate Appeals D. Foston; D. Jordan, mailroom employee at CSP-Cor; CSP-Cor appeals coordinators C. Barnett, T. Cano, and K. Cribbs; correctional captain M. Seitert; protestant chaplain R. Indermill; native American spiritual leader B. Albitre; community resources manager M. Smith; appeals examiner R. Davis; correctional captain K. Pool; chief of inmate appeals J. D. Lozano; deputy warden J. Cavazos; Jewish rabbi John Doe 1; and Does 2 through 10.

Plaintiff alleges the following. Plaintiff is a member of the Creativity religion, also known as Ecclesia Creatoris[1], for over 12 years[2], and has been an ordained minister of his church for a decade.[3]

---

[1] The World Church of the Creator changed its name as a result of losing a trademark violation action. *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662 97th Cir. 2002).

[2] Plaintiff's oath in 2001 was as follows:
"I hereby pledge my undying loyalty to the White Race and to the World Church of the Creator; that I am a true member of the White Race and will faithfully practice racial loyalty; that at all times, I will practice the Golden Rule, namely, to promote the best interests of the White Race; that I believe in the mission of the World Church of the Creator, will obey instructions issued by my superiors, and will fight for its aims by lawful means. Therefore, I hereby apply for membership in the World Church of the Creator in order that I may spread the word more effectively and make my utmost contribution to my race. This I pledge without reservation."

[3] Plaintiff's oath upon becoming an ordained minister was as follows:
"Having been duly accepted for the ministry in the World Church of the Creator, I hereby reaffirm my undying loyalty to the White Race and the World Church of the Creator and furthermore swear allegiance unto Pontifex Maximus Matt Hale, and his duly appointed successors; that I will carry out all instructions assigned to me; that I will fervently promote the creed and program of Creativity as long as I live; that I will follow the Sixteen Commandments and encourage others to do the same; that the World Church of the Creator is the only pro-White organization of which I am a member so that my energies may not be divided; that I will remain knowledgeable of our sacred creed, particularly of the books, Nature's Eternal Religion and the White Man's Bible; that I will always exhibit high character and respect; and lastly, that I will aggressively convert others to our faith and build my own ministry."

2

Plaintiff has written many articles pertaining to his Creativity religion, mentored, tutored, and converted others, and created the Creativity Prison Ministries.

Practitioners of Creativity, known as Creators, also practice Salubrious Living, which consists of a fruitarian diet of raw organic whole fruits, vegetables, and some grains, and clean, pure water or freshly squeezed juice from organic fruits and vegetables. Creators study Creativity holy books daily, observe Creator holy days, recite Creativity prayers, and obey the clergy of the Creativity religion.

### A.    Confiscation of Creativity Material from Plaintiff's Cell

On January 24, 2011, Defendants Mayo and Mussellman performed an arbitrary and unreasonable search of Plaintiff's cell, removing flyers from Plaintiff's wall. The materials were given to Defendant D. J. Ruiz, who confiscated it as gang-related material and racist. Three of the flyers contained material concerning Creativity, and two other flyers contained messages advocated by Creativity, namely not doing drugs and keeping one's bloodline pure.

Plaintiff attempted to explain to Defendant Ruiz that the material was religious in nature, but Defendant Ruiz was hostile and belligerent, refusing to provide Plaintiff with a receipt for the materials.

### B.    Inmate Appeal Regarding Incident

On January 24, 2011, Plaintiff filed an inmate appeal regarding the above incident. The appeal was rejected with instructions on refilling. On February 26, 2011, Plaintiff re-filed the appeal. On March 22, 2011, Defendant D. Berna interviewed Plaintiff regarding the matter. Defendant D. Berna issued a denial response at the first level, which was reviewed by Defendant Ruiz, and approved by Defendant J. C. Smith. Defendant C. Gipson denied the appeal at the second level of review, finding that the material was gang-related. On May 25, 2011, Plaintiff submitted the material for third level review. The appeal was returned without explanation. Plaintiff then resubmitted the appeal directly by mail to the Inmate Appeals Branch of CDCR. On August 17, 2011, and September 15, 2011, Defendant Foston denied the appeal.

### C.    Rejection of Mail

On October 28, 2010 and November 5, 2010, Plaintiff received disallowal notices from the

3

mail room, signed by Defendant D. Jordan and approved by Defendant M. Seifert. The reason provided was that it was racist material. The rejected material was Masters of Ceremony, a picture book of ceremonies held by the Nationalist Socialist Government of Germany, and Ecclesia Creatoris Membership Manual, which described the organizational structure of the Ecclesia Creatoris.

### D. Inmate Appeal Regarding Rejections

Plaintiff filed inmate appeals on October 28, 2010 and November 7, 2010, complaining of the denials. Defendant Jordan did not respond to Plaintiff's appeals. Plaintiff submitted a request for interview with Defendant Jordan, who ignored it. Plaintiff submitted another appeal on November 21, 2010 regarding rejection of the material and refusal of the interview. On December 24, 2010, this appeal was rejected by Defendant T. Cano for failing to include the disallowal notices. Plaintiff resubmitted the appeal with an explanation that he did not possess the disallowal notices. This appeal was ignored.

On June 3, 2011, Plaintiff again submitted a new appeal, explaining the issue and how his previous appeals had disappeared. On June 17, 2011, Defendant C. Barnett rejected the appeal, instructing Plaintiff to attach copies of the rejected materials, and proof showing that the material had been rejected. Defendant also instructed Plaintiff to choose whether it was a staff complaint or a complaint regarding rejection of the material. Plaintiff chose staff complaint, and resubmitted the appeal with explanations on June 23, 2011. On July 20, 2011, Defendant Cribbs rejected the appeal because the disallowal notices were not attached. Plaintiff again resubmitted the appeal on August 18, 2011 with further explanation. On September 6, 2011, Defendant Cribbs rejected the appeal for Plaintiff failing to attempt to acquire copies of the disallowal notice, despite Plaintiff attempting to do so. Plaintiff resubmitted the appeal several more times, and it was rejected on October 3, 2011 and October 31, 2011 by Defendants Cribbs and Barnett, respectively.

### E. Religious Diet

Plaintiff complains that the religious vegetarian diet which he receives fails to meet his religious requirements. Plaintiff complains that CSP-Cor will not discuss the creation of a fruitarian diet.

4

Plaintiff requested an interview with Defendant Indermill regarding his religious diet. Defendant Indermill informed Plaintiff that he was awaiting a response from other Creator inmates. Plaintiff also contacted other Creators and learned that they had already responded to Defendant Indermill's inquiry. On February 18, 2010, Plaintiff submitted another request for interview, stating that he had contacted the Creativity Prison Ministries, which had responded to Defendant Indermill.

On July 4, 2010, Plaintiff submitted an inmate appeal regarding his religious diet and Defendant Indermill's failure to address Plaintiff's inquiries. On October 21, 2010, Defendant Albitre interviewed Plaintiff regarding his appeal. Defendant Albitre denied Plaintiff's appeal, finding that the religious vegetarian diet was the closest diet to Plaintiff's own requested needs.

On October 25, 2010, Plaintiff filed the appeal to the first level of review. On October 29, 2010, Defendant T. Cano rejected it as a duplicate of another appeal that Plaintiff had filed. Defendant Cano rejected Plaintiff's subsequent appeals attempting to explain the matter.

### F.     Inmate Appeal Regarding Denial of Religious Diet

On May 20, 2011, Plaintiff filed inmate appeals claiming that the staff was intentionally impeding his attempts to obtain a religious diet in accord with the tenets of his religion. Defendant Barnett rejected the appeal for not trying to resolve this issue. On June 21, 2011, Plaintiff resubmitted the appeal. On July 13, 2011, Defendant Albitre interviewed Plaintiff for first level review. Defendant Albitre denied the appeal, stating that the diet requested is not provided by CSP-Cor. Defendant M. Smith approved it.

On July 20, 2011, Plaintiff resubmitted the appeal for second level review. On August 15, 2011, Defendant Cavazos reviewed and denied Plaintiff's appeal. On August 23, 2011, Plaintiff submitted the appeal for third level review. On November 22, 2011, Defendant R. Davis reviewed and denied the appeal. The decision was reviewed and approved and by Defendant D. Foston.

### F.     Substitute Religious Diet

Plaintiff requested placement on the Jewish Kosher diet as the closest equivalent to Plaintiff's own religious dietary needs. On September 19, 2011, Plaintiff filed a request to Defendant Albitre to switch to the Jewish Kosher diet. On September 23, 2011, Defendant Albitre submitted a response, sending Plaintiff a form to be removed from the religious diet program. On

5

1  September 25, 2011, sent a request for supervisor review, explaining why he wanted a kosher diet.
2  On September 27, 2011, Plaintiff Defendant M. Smith responded that only a rabbi could approve a
3  request for a kosher diet.

4      On November 2, 2011, Plaintiff filed an inmate appeal complaining of favoritism for Jewish
5  inmates due to Plaintiff being denied the kosher diet.  On November 26, 2011, the appeal was
6  rejected for not providing Plaintiff's religious approval form.  On November 30, 2011, Plaintiff
7  resubmitted the appeal with the form.  On December 22, 2011, Defendant Albitre denied the appeal.
8  On January 5, 2012, Plaintiff submitted his appeal to the second level of review.  On January 13,
9  2012, Plaintiff appeal was denied at the second level of review by Defendant Cavazos.

10      On April 17, 2012, Plaintiff submitted a request to Defendant Rabbi John Doe 1, requesting
11  placement on the Jewish Kosher diet as the closest alternative diet.  On May 17, 2012, Defendant
12  Doe denied Plaintiff's request because he is not Jewish.

13      Plaintiff alleges violations of freedom of religion, freedom of speech, and the Establishment
14  Clause, violation of his right to petition the government for redress of grievances, violation of his
15  right to be free from unreasonable searches and seizures, violation of equal protection and due
16  process under the Fourteenth Amendment, and violation of the Religious Land Use and
17  Institutionalized Persons Act of 2000.  Plaintiff requests compensatory and punitive damages, and
18  declaratory and injunctive relief.

19  **III.**  **Analysis**
20      **A.**  **Rule 20 of the Federal Rules of Civil Procedure**
21      Plaintiff's claims regarding rejection of his inmate mail are unrelated to his claims
22  concerning the practice of his religion, as they do not arise from the same series of transactions or
23  occurrences.  Fed. R. Civ. P. 20(a)(2).  Plaintiff's other claims in this action all concern the practice
24  of his religion and alleged discrimination against the practice of his religion.  Thus, the Court will
25  dismiss Plaintiff's claims concerning rejection of his incoming mail, without prejudice to re-filing as
26  a new, separate action.

27      **B.**  **Free Exercise of Religion**
28      The right to exercise religious practices and beliefs does not terminate at the prison door.

The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v. Woods*, 658 F. 2d 679, 683 (9th Cir. 1981)). Plaintiff alleges sufficient facts to demonstrate that he sincerely believes in the tenets of Creativity. Thus, the remaining issue is whether Plaintiff's beliefs are considered rooted in religion, as Plaintiff's beliefs are not traditionally associated with a major religion.

While the Ninth Circuit has not addressed this issue specifically in the context of the Free Exercise Clause, other courts in this circuit have applied the criteria identified in *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), and adopted by the Ninth Circuit in the context of the Establishment Clause in *Alvarado v. City of San Jose*, 94 F.3d 1223 (9th Cir. 1996), to determine whether a set of beliefs is religious. *See Birkes v. Mills*, No. 03:10-cv-00032-HU, 2011 WL 5117859 (D. Or. Sept. 28, 2011) (applying *Africa* to Church of the Creator); *Prentice v. Nev. Dep't of Corr.*, No. 3:09–cv–0627–RCJ–VPC, 2010 WL 4181456 (D. Nev. Oct. 19, 2010) (same); *Conner v. Tilton*, No. C 07-4965 MMC PR, 2009 WL 4642392 (N.D. Cal. Dec. 2, 2009) (same).

The Third Circuit identified the following criteria to assist courts in determining whether a set of beliefs is religious:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Africa*, 662 F.2d at 1032.

Under the first criteria, Creativity does not address fundamental and ultimate questions having to do with deep and imponderable matters.

> Traditional religions consider and attempt to come to terms with what could best be described as "ultimate" questions-questions having to do with, among other things, life and death, right and wrong, and good and evil. Not every tenet of an established theology need focus upon such elemental matters, of course; still, it is difficult to conceive of a religion that does not address these larger concerns. For, above all else, religions are characterized by their adherence to and promotion of certain "underlying

7

theories of man's nature or his place in the Universe.

*Id.* at 1033. Here, Plaintiff's allegations indicate that the primary purpose of Creativity is based on purely secular considerations. *Conner*, 2009 WL 4642392, at *11 (finding that Creativity does not meet first criteria of *Africa* because "[b]eliefs that are based on 'purely secular considerations[]' . . . are not entitled to the protections of the First Amendment, no matter how sincerely such beliefs are held.").

Under the second criteria, Creativity is not composed of a belief-system, but rather is in support of an isolated teaching: the promotion of the White Race, as stated in Creativity's Golden rule. Under the third criteria, while Creativity has formal and external signs that are analogous to traditional religions, the sole purpose is support of a secular belief system. Accordingly, Creativity is not a religion for purposes of the Free Exercise Clause.

Because Creativity is not a religion for purposes of the Free Exercise Clause, Plaintiff is not entitled to receive a specific religious diet, or a comparable religious diet. Plaintiff thus fails to state a claim regarding denial of a religious diet. Plaintiff likewise fails to state a claim regarding free exercise of Creativity.

### C. Establishment Clause

Plaintiff contends that the CDCR favors traditional religions over belief systems such as Creativity. The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947), states that "Congress shall make no law respecting an establishment of religion."' U.S. Const. amend. I. The Establishment Clause "means at least" that "[n]either a state nor the Federal Government . . . can pass laws which aid one religion, aid all religions, or prefer one religion over another." *Everson*, 330 U.S. at 15.

Plaintiff fails to state a claim for violation of the Establishment Clause. As stated previously, Plaintiff is not a member of a religion for purposes of the First Amendment. *Alvarado*, 94 F.3d at 1228-29 (applying *Africa* criteria to Establishment Clause claims).

### D. Equal Protection

Plaintiff contends that other religions are treated differently and more preferentially than

8

Creativity, such as Jewish inmates receiving kosher meals or members of the traditional religions being permitted more religious rights and privileges. The Equal Protection Clause requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). The Equal Protection Clause entitles each prisoner to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto,* 405 U.S. 319, 322 (1972); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).

Plaintiff however has failed to identify that he is the member of a suspect class, and thus fails to state a claim. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds*, *Shakur*, 514 F.3d at 884-85.

### E. RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

Though not explicitly addressed by the Ninth Circuit, one appellate court has found that "because RLUIPA is a guarantor of sincerely held religious beliefs, it may not be invoked simply to protect any 'way of life, however virtuous and admirable, . . . if it is based on purely secular considerations.'" *Koger v. Bryan*, 523 F.3d 789, 797-98 (7th Cir. 2008) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972)); *see Birkes*, 2011 WL 5117859, at *7; *Conner*, 2009 WL 4642392, at *14-15. Similarly, Plaintiff's RLUIPA claim fails to state a claim.

### F. Due Process - Property

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause,

*see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," *Hudson*, 468 U.S. at 533.  California provides such a remedy.  *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam).

Plaintiff's allegations against Defendants D. J. Ruiz, Mayo, and Mussellman fail to state a claim.  Plaintiff alleges at most an unauthorized deprivation of property, which is not actionable under the Due Process Clause because of the existence of a meaningful postdeprivation remedy under California law.

### G.  Inmate Grievance Procedure

Plaintiff alleges that several Defendants who reviewed Plaintiff's inmate grievances failed to provide proper review.   Plaintiff's allegations amount at most to a disagreement with how Defendants adjudicated his inmate grievances.  Plaintiff is not entitled to a specific grievance procedure under federal due process.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).  Accordingly, Plaintiff fails to state a claim.

## IV.  Conclusion and Recommendation

The undersigned does not find that Plaintiff can amend his pleadings to cure the deficiencies identified.  Leave to amend will thus not be granted.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's claim regarding rejection of incoming mail is dismissed from this action, without prejudice to re-filing in a separate, new action, for failure to comply with Rule 20(a)(2) of the Federal Rules of Civil Procedure; and
2. Plaintiff's remaining claims are dismissed with prejudice for failure to state a claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days**

10

after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 26, 2013**                              /s/ *Dennis L. Beck*
                                                     UNITED STATES MAGISTRATE JUDGE