# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY TODD,<br><br>  Plaintiff,<br><br>  v.<br><br>CDCR, et al.,<br><br>  Defendants. | Case No. 1:12-cv-01003 DAD DLB PC<br><br>FINDINGS AND RECOMMENDATIONS FINDING CERTAIN COGNIZABLE CLAIMS AND DISMISSING REMAINING CLAIMS AND DEFENDANTS<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Michael Anthony Todd ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on June 21, 2012. He filed a First Amended Complaint on September 12, 2012.

On March 26, 2013, the Court screened Plaintiff's First Amended Complaint and determined that it did not state any claims for relief. The Court dismissed the action on April 9, 2013, and Plaintiff appealed the dismissal.

On August 27, 2015, the Ninth Circuit Court of Appeals reversed this Court's order dismissing the action in part and remanded the action. Specifically, the Ninth Circuit determined that this Court prematurely dismissed Plaintiff's First Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Establishment Clause and equal protection claims because his allegations, liberally construed, were sufficient to warrant a response from certain

Defendants.

Therefore, on September 23, 2015, the Court vacated the judgment and ordered Plaintiff to return service documents for eight Defendants. On December 4, 2015, the Court directed the United States Marshal to serve these Defendants.

The Court ultimately determined that it was unclear which Defendants should have been served and vacated the service order pending rescreening of the First Amended Complaint. The Court now issues this screening order, consistent with the Ninth Circuit's remand, to clarify which Defendants remain in this action.

**A.    SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or

omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     ALLEGATIONS IN FIRST AMENDED COMPLAINT[1]**

Plaintiff is incarcerated at Corcoran State Prison ("CSP") in Corcoran, California, where the events at issue occurred.

Plaintiff is a member of the "Ecclesia Creatoris" religious organization, which promotes the Creativity Religion. Plaintiff is also a minister of his church. He states that he sincerely believes in the tenets of creativity, and has pledged his "undying loyalty to the White race. . ." ECF No. 13, at 6. Plaintiff has been teaching the tenets of Creativity to other inmates for twelve years and this has not caused any problems within CDCR.

*Confiscation of Creativity Material from Plaintiff's Cell*

On January 24, 2011, Defendants Mayo and Mussellman searched Plaintiff's cell because they noticed the flyers hanging on Plaintiff's wall. They seized the flyers and gave them to Defendant Ruiz, who confiscated the documents as gang-related material and noted their racist nature. Plaintiff contends that the flyers were religious in nature and did not advocate violence or illegal behavior. Plaintiff states that he tried to explain this to Defendant Ruiz, but he became belligerent and refused to give Plaintiff a receipt for the confiscated material. Plaintiff contends that the confiscation violated his due process rights and constituted religious discrimination.

Plaintiff filed an inmate appeal relating to Defendant Ruiz's confiscation of his religious material. The appeal was returned with instructions to use a new appeal form. Plaintiff resubmitted the appeal on February 26, 2011.

---

[1] In the prior screening order, the Court determined that allegations relating to the denial of Plaintiff's incoming mail were not properly joined in this action. The Ninth Circuit's remand did not impact this determination and the Court will therefore not include these allegations. Defendants Jordan and Siefert are involved only in the incoming mail claim.

3

///

Plaintiff was interviewed by Defendant Berna on March 22, 2011. Plaintiff told him that the material was not gang-related, but was religious in nature and should not have been confiscated. Defendant Berna denied the appeal at the First Level. Defendant Ruiz reviewed the decision and Defendant Smith approved it. Plaintiff contends that Defendant Berna made false statements in the denial and forged a receipt with the wrong date and wrong material confiscated. Defendant Berna also failed to address the issues related to Defendant Ruiz. Plaintiff contends that this interfered with his right to petition for redress of his grievances.

Plaintiff submitted an appeal to the Second Level on April 9, 2011. Defendant Gipson denied the appeal and again ignored the issues related to Defendant Ruiz. Plaintiff contends that this interfered with his right to petition for redress of his grievances.

Plaintiff submitted the appeal to the Third Level on May 25, 2011. The appeal was returned without explanation. Plaintiff then sent the appeal directly to the Chief of Inmate Appeals on July 21, 2011. Defendant Foston cancelled the appeal on August 17, 2011, because Plaintiff had exceeded the time limits. Plaintiff resubmitted the appeal on August 23, 2011, and Defendant Foston cancelled it on September 15, 2011, without responding to Plaintiff's explanation for the delay. Plaintiff contends that this interfered with his right to file grievances.

*Religious Diet*

Plaintiff contends that his religious requires a fruitarian diet, which consists of raw, uncooked and unprocessed organic whole foods. Plaintiff states that Defendants recognize his need for a religious diet, but since this diet is not offered at Corcoran, he is on the vegetarian diet. However, Plaintiff contends that the vegetarian diet does not meet his dietary needs, and he alleges that providing other inmates with their religious diet, while denying his, is religious discrimination. Plaintiff also alleges that the refusal to place him on a Kosher diet, which is only available to Jewish inmates, is religious discrimination.

On February 4, 2010, Plaintiff requested an organic raw rood/fruitarian diet because of his Creativity religion. Defendant Indermill responded to the request, indicating that he attempted to contact other members of Plaintiff's faith to get details regarding the diet. He said that he would not

4

consider Plaintiff for a religious diet until he heard back from these people.

Plaintiff learned that a member of the Creativity Prison Ministries responded to Defendant Indermill's inquiry on July 1, 2008. Plaintiff contends that Defendant Indermill intentionally misrepresented the facts in an attempt to deny Plaintiff the ability to practice his religion.

On February 18, 2010, Plaintiff submitted a request for interview to Defendant Indermill, but he never responded to the request. Plaintiff states that this interfered with his right to petition for redress of grievances.

Plaintiff submitted an inmate appeal on July 4, 2010, and was interviewed by Defendant Albitre on October 21, 2010. Defendant Albitre denied the appeal, finding that the diet was not available at Corcoran, and that the religious vegetarian diet was the closest diet to Plaintiff's requested needs. Plaintiff believes that since the vegetarian diet is the only religious diet available to non-Jewish inmates and non-Muslim inmates, it constitutes religious discrimination and a violation of equal protection.

On October 25, 2010, Plaintiff submitted an appeal to the First Level. Defendant Cano rejected the appeal on October 29, 2010, because it was a duplicate of another appeal and was not religious in nature. Plaintiff contends that this interfered with his right to practice his religion and his right to petition for redress of grievances.

Plaintiff resubmitted the appeal to Defendant Cano on October 31, 2010. He cancelled the appeal without explanation on November 26, 2010. Plaintiff contends that this interfered with his right to petition for redress of his grievances.

On November 28, 2010, Plaintiff submitted an appeal against Defendant Cano. Defendant Campbell rejected the appeal on December 27, 2010, for failure to attach the appeal cancelled by Defendant Cano.

Plaintiff resubmitted the appeal on December 28, 2010. He never received a response. Plaintiff contends that Defendant Campbell intentionally obtained and destroyed evidence to prohibit Plaintiff from redressing his grievance against Defendant Cano.

On May 20, 2011, Plaintiff submitted an appeal regarding staff attempts to impede his attempts to obtain his religious diet. On June 19, 2011, Defendant Barnett rejected the appeal

1  because there was no evidence that Plaintiff attempted to previously resolve the issue.

2  Plaintiff resubmitted the appeal on June 21, 2011. Defendant Albitre interviewed him on
3  July 13, 2011. Defendant Albitre denied the appeal, finding that the diet Plaintiff requested was not
4  available at Corcoran. Defendant Smith reviewed and approved the denial.

5  On July 20, 2011, Plaintiff submitted the appeal to the Second Level. Defendant Cavazos
6  denied the appeal on August 15, 2011.

7  Plaintiff submitted the appeal to the Third Level on August 23, 2011. Defendant Davis
8  reviewed the appeal and denied it on November 22, 2011. Defendant Foston reviewed and approved
9  the denial. Plaintiff contends that this is religious discrimination and a violation the Equal Protection
10 Clause.

11 *Alternative Religious Diet*

12 Because Plaintiff could not obtain his fruitarian diet, he attempted to be placed on the Kosher
13 diet, as it is the closest alternative available at Corcoran. However, only Jewish inmates are
14 permitted to be on the Kosher diet. Plaintiff contends that this discriminatory practice prevents him
15 from receiving the most suitable religious alternative diet, and forces him to choose between obeying
16 the tenets of his religion and suffering from malnutrition.

17 On September 19, 2011, Plaintiff asked Defendant Albitre to be switched from the vegetarian
18 diet to the Kosher diet. Defendant Albitre responded on September 23, 2011, by sending Plaintiff a
19 request form to be removed from the religious diet program.

20 On September 25, 2011, Plaintiff sent the request to Defendant Smith for supervisor review.
21 Defendant Smith responded on September 27, 2011, explaining that only a Rabbi could approve a
22 request for a Kosher diet.

23 On November 2, 2011, Plaintiff submitted an inmate appeal alleging religious discrimination
24 and favoritism towards Jewish inmates. The appeal was rejected on November 26, 2011. Plaintiff
25 resubmitted the appeal on November 30, 2011.

26 On December 22, 2011, Defendant Albitre denied the appeal at the First Level, stating that he
27 could not approve a request for a Kosher diet. This denial was reviewed and approved by Defendant
28 Smith.

///

On January 5, 2011, Plaintiff submitted the appeal for Second Level review. The appeal was denied at the Second Level by Defendant Cavazos.

Plaintiff submitted a request for interview to Rabbi John Doe on April 19, 2012. On May 17, 2012, Rabbi John Doe denied the request for a Kosher diet because Plaintiff was not Jewish. Plaintiff contends that this is religious discrimination.

On January 24, 2012, Plaintiff submitted the appeal for Third Level review. Defendant Pool denied the appeal on April 18, 2012, finding that Plaintiff was attempting to circumvent the appeals process by submitting a duplicate appeal. Defendant Lozano reviewed and approved the denial, and then cancelled Plaintiff's appeal. Plaintiff contends that it was not a duplicate appeal, and that their actions interfered with his right to petition for redress of his grievances.

*Holy Books of Creativity*

Next, Plaintiff alleges that Defendants have burdened the practice of his religion by placing Holy Books of Creativity on the list of books banned at CSP. He contends that enforcement of this ban "can and will" interfere with his ability to fully and properly practice his religion. Defendants allow the Holy Books of traditional religions to enter CSP, and Plaintiff argues that this is a violation of the Establishment Clause and the Equal Protection Clause.

On August 11, 2010, Plaintiff submitted a request for religious accommodation to the warden, but the request was ignored. Plaintiff contends that this was intentional destruction of evidence and interference with his right to petition for a redress of grievances.

Plaintiff submitted an inmate appeal on March 22, 2011, relating to the general denial of his right to practice his religion. Defendant Barnett rejected the appeal on March 22, 2011, because Plaintiff had included numerous issues and did not provide supporting documentation.

Plaintiff resubmitted the appeal on April 3, 2011, arguing that he was presenting a single issue. Defendant Barnett rejected the appeal again on April 15, 2011. Plaintiff resubmitted the appeal on April 21, 2011, but Defendant Barnett cancelled it on May 13, 2011, claiming that Plaintiff failed to follow instructions. Plaintiff contends that this was intentional interference with his right to petition for redress of grievances.

///

On May 19, 2011, and June 20, 2011, Plaintiff submitted requests for interviews to Defendant Smith, requesting that his religion be recognized and approved at CSP. The requests were never acknowledged, and Plaintiff contends that this was intentional destruction of evidence and interference with his right to petition for a redress of grievances.

On July 3, 2011, Plaintiff submitted an inmate appeal relating to his attempts to have his religion recognized.

Plaintiff submitted a request for interview to Defendant Albitre on July 5, 2011, and explained the situation. The request was never acknowledged, and Plaintiff contends that this was intentional destruction of evidence and interference with his right to petition for a redress of grievances.

On July 18, 2011, Defendant Campbell rejected the appeal, claiming that Plaintiff was lying about his appeals/requests being ignored. Plaintiff contends that this interfered with his right to file grievances.

*Recognition of Creativity*

On July 20, 2011, Plaintiff resubmitted the appeal with the requested documentation. Defendant Albitre interviewed him for First Level review on August 29, 2011. He informed Plaintiff that he was not authorized to approve a religion, but would present the issue to the Religious Review Committee for discussion. Defendant Albitre refused to accept evidence offered by Plaintiff in support of his request to approve his religion, and demanded that Plaintiff provide the name of an outside representative. Plaintiff provided him with information for a minister in Riverside, California. Plaintiff contends that Defendant Albitre interfered with his ability to present evidence and have his religion recognized, in violation of the Establishment Clause, Free Exercise Clause and RLUIPA.

On August 29, 2011, Defendant Albitre denied the appeal, falsely claiming that Plaintiff was provided with an opportunity to provide evidence, and that he only provided contact information. Defendant Albitre also stated that he contacted the outside representative but did not receive a response, and was therefore forced to perform research on the internet. Defendant Albitre found that

the religion was "racially motivated" and did not provide any religious qualities.[2]  ECF No. 13, at 37.  The denial was reviewed and approved by Defendant Smith.  On September 23, 2011, Plaintiff submitted the appeal for Second Level review.  Defendant Cavazos denied the appeal on October 20, 2011, and agreed with the First Level findings.  Plaintiff contends that this was a deliberate attempt to prevent his religion from being recognized, and a violation of the Establishment Clause, Free Exercise Clause and RLUIPA.

On October 26, 2011, Plaintiff submitted the appeal for Third Level review and attached evidence.  Defendant Davis denied the appeal on January 13, 2012, again only mentioning the "Church of Creativity," which Plaintiff claims he is not affiliated with.  Defendant Foston reviewed and approved the denial.  Plaintiff contends that this is religious discrimination and intentional interference with his ability to have his religion recognized, in violation of the Establishment Clause, Free Exercise Clause, the Equal Protection Clause, and RLUIPA.

On December 12, 2010, Plaintiff submitted an appeal to the Warden relating to the fact that the Appeals Office was continuously refusing to file his appeals.  Plaintiff submitted another appeal on January 30, 2011.  The appeals were ignored, and Plaintiff contends that this was intentional destruction of evidence and interference with his ability to use the appeals process to address his grievances.

**C.    DISCUSSION**

    1.    Due Process

The Ninth Circuit affirmed this Court's determination that Plaintiff does not have a due process right related to the confiscation of his property, as there is an adequate post-deprivation remedy under California law.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Accordingly, Plaintiff fails to state a due process claim against Defendants Mayo, Mussellman and Ruiz.

    2.    Processing and Handling of Grievances

The Ninth Circuit also affirmed this Court's determination that Plaintiff did not have a "constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).  Therefore, all of Plaintiff's allegations relating to the

---

[2] Plaintiff also contends that Defendant Albitre researched the "Church of Creativity," but that he actually belongs to the "Ecclesia Creatoris" organization.  ECF No. 13, at 37.

9

processing and handling of his grievances fail to state a claim. Defendants Berna, Gipson, Foston, Cano, Campbell, Barnett, Cavazos, Davis, Pool and Lozano are involved only in the handling of Plaintiff's appeals and they should be dismissed from this action.

        3.        <u>Cognizable Claims</u>

The Ninth Circuit determined that, liberally construed, Plaintiff's First Amendment, RLUIPA, Establishment Clause and equal protection claims stated claims for relief and warranted a response from the Defendants involved in such allegations. The Court did not, however, express an opinion as to whether Creativity constitutes a religion.

Accordingly, Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz and Rabbi John Doe shall remain in this action.[3]

## D.     **FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court finds that this action SHALL PROCEED on Plaintiff's First Amendment, RLUIPA, Establishment Clause and equal protection claims against Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz and Rabbi John Doe. Plaintiff fails to state any other cognizable claims and Defendants Jordan, Seifert, Berna, Gipson, Foston, Cano, Campbell, Barnett, Cavazos, Davis, Pool and Lozano should be DISMISSED from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may

///
///
///
///
///

---

[3] Plaintiff will be instructed on service if and when these Findings and Recommendations are adopted. Plaintiff is advised that the United States Marshal cannot initiate service of process on unknown defendants. Therefore, the Court will send Plaintiff the appropriate service documents at such time that Plaintiff ascertains that identities of the Doe Defendant.

1  waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir.
2  1991).

IT IS SO ORDERED.

Dated:   **January 7, 2016**                              /s/ Dennis L. Beck
                                                      UNITED STATES MAGISTRATE JUDGE