# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY TODD,<br><br>    Plaintiff,<br><br>    v.<br><br>CDCR, et al.,<br><br>    Defendants. | Case No. 1:12-cv-01003 DAD DLB PC<br><br>FINDINGS AND RECOMMENDATIONS FINDING CERTAIN COGNIZABLE CLAIMS AND DISMISSING REMAINING CLAIMS<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Michael Anthony Todd ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on June 21, 2012. He filed a First Amended Complaint on September 12, 2012.

On March 26, 2013, the Court screened Plaintiff's First Amended Complaint and determined that it did not state any claims for relief. The Court dismissed the action on April 9, 2013, and Plaintiff appealed the dismissal.

On August 27, 2015, the Ninth Circuit Court of Appeals reversed this Court's order dismissing the action in part and remanded the action. Specifically, the Ninth Circuit determined that this Court prematurely dismissed Plaintiff's First Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Establishment Clause and equal protection claims because his allegations, liberally construed, were sufficient to warrant a response from certain Defendants.

Therefore, on September 23, 2015, the Court vacated the judgment and ordered Plaintiff to return service documents for eight Defendants. On December 4, 2015, the Court directed the United States Marshal to serve these Defendants.

The Court ultimately determined that it was unclear which Defendants should have been served and vacated the service order pending rescreening of the First Amended Complaint. The Court Findings and Recommendations on January 7, 2016, finding that the action should proceed on Plaintiff's First Amendment, RLUIPA, Establishment Clause and equal protection claims against Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz and Rabbi John Doe.

On February 16, 2016, however, Plaintiff moved for leave to file a Second Amended Complaint.[1] The Court granted the motion to amend, vacated the January 7, 2016, Findings and Recommendation and filed Plaintiff's Second Amended Complaint. He names the California Department of Corrections and Rehabilitation ("CDCR"), California State Prison- Corcoran ("CSP"), D.J. Ruiz, Correctional Officers Mayo and Mussellman, R. Indermill, B. Albitre, M. Smith and Rabbi Carron as Defendants.

**A.   SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

[1] Plaintiff indicated that he would not object to the dismissals outlined in the January 7, 2016, Findings and Recommendations. He stated that his Second Amended Complaint omits the Defendants against whom the Court found that he did not state a claim, and provides "update[d]" facts, including the identification of a prior Doe Defendant.

2

do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.  ALLEGATIONS IN SECOND AMENDED COMPLAINT[2]**

Plaintiff is incarcerated at California State Prison- Sacramento. The events at issue occurred at CSP in Corcoran, California.

Plaintiff is a member of the "Ecclesia Creatoris" religious organization, which promotes the Creativity Religion. Plaintiff is also a minister of his church. He states that he sincerely believes in the tenets of Creativity, and has pledged his "undying loyalty to the White race. . ." ECF No. 41, at 5. Plaintiff has been teaching the tenets of Creativity to other inmates for fourteen years and this has not caused any problems within CDCR.

*Confiscation of Creativity Material from Plaintiff's Cell*

On January 24, 2011, Defendants Mayo and Mussellman searched Plaintiff's cell because they, along with Defendant Ruiz, noticed the flyers hanging on Plaintiff's wall. They seized the

---

[2] In a prior screening order, the Court determined that allegations relating to the denial of Plaintiff's incoming mail were not properly joined in this action. The Ninth Circuit's remand did not impact this determination and the Court will therefore not include these allegations.

3

1  flyers and gave them to Defendant Ruiz, who confiscated the documents as gang-related material
2  and noted their racist nature.  Plaintiff contends that the flyers were religious in nature and did not
3  advocate violence or illegal behavior.  Plaintiff states that he tried to explain this to Defendant Ruiz,
4  but he became belligerent and refused to give Plaintiff a receipt for the confiscated material.

Plaintiff filed an inmate appeal relating to Defendant Ruiz's confiscation of his religious material.  The appeal was returned with instructions to provide a description of the confiscated material.  Plaintiff resubmitted the appeal.  He contends that during adjudication of the appeal, Defendant Ruiz provided falsified information and interfered with the appeal process.  The appeal was not processed at the Third Level because the time limits had elapsed.

*Religious Diet*

Plaintiff contends that Creativity requires a fruitarian diet, which consists of raw, uncooked and unprocessed organic whole foods.  The diet also calls for (1) drinking only clean, pure, unpolluted water (or filtered or distilled water as a last resort) and fresh-squeezed juice from organic fruits and vegetables; and (2) avoiding man-made chemicals, supplements, medicines and additives.

Plaintiff states that Defendants have not contested his need for a religious diet, and have placed him on the vegetarian diet at various institutions and offered him the Halal diet given to Muslim inmates.  Plaintiff states that he has not been given his religious diet because it is not offered at CSP, and it is not a CDCR-approved religious diet.  Plaintiff contends that the vegetarian diet does not meet his dietary needs.  He states that Defendants offer other religious diet, but refuse to even consider Plaintiff's request for a fruitarian diet.

On February 4, 2010, Plaintiff submitted a request for interview and requested an organic raw rood/fruitarian diet because of his Creativity religion.  Defendant Indermill responded to the request, indicating that he attempted to contact other members of Plaintiff's faith to get details regarding the diet.  He said that he would not consider Plaintiff for a religious diet until he heard back from these people.

Plaintiff learned that a member of the Creativity Prison Ministries responded to Defendant Indermill's inquiry on July 1, 2008.  Plaintiff contends that Defendant Indermill intentionally misrepresented the facts in an attempt to deny Plaintiff the ability to practice his religion.

4

1      On February 18, 2010, Plaintiff submitted a request for interview to Defendant Indermill
2 stating that he had evidence that the Creativity Prison Ministries responded to his inquiry, but he
3 never responded to the request.

4      Plaintiff submitted an inmate appeal on July 4, 2010, and was interviewed by Defendant
5 Albitre on October 21, 2010.  Defendant Albitre denied the appeal, finding that the diet was not
6 available at CSP and he could not grant a non-approved diet.  Defendant Albitre placed Plaintiff on
7 the vegetarian religious alternative diet as a temporary measure, claiming that it was the closest diet
8 to Plaintiff's requested needs.  Defendant Albitre also ignored Plaintiff's complaint against
9 Defendant Indermill.  Plaintiff believes that since the vegetarian diet is the only religious diet
10 available to non-Jewish inmates and non-Muslim inmates, it constitutes religious discrimination.

11     Plaintiff filed an appeal on the issue and was again interviewed by Defendant Albitre.
12 Defendant Albitre denied the appeal.  Defendant Smith, as Defendant Albitre's supervisor, reviewed
13 and approved the denial.

14     *Alternative Religious Diet*

15     Because Plaintiff could not obtain his fruitarian diet, he attempted to be placed on the Kosher
16 diet, as it is the closest alternative that CSP and CDCR offers.  However, only Jewish inmates are
17 permitted to be on the Kosher diet.  Moreover, a Halal diet is only offered to a non-Muslim if the
18 inmate refuses the vegetarian diet and continues to pursue a religious diet.  Plaintiff contends that
19 this discriminatory practice restricts him to either the vegetarian or Halal diet, neither of which meet
20 his dietary needs and prevents him from receiving the most suitable religious alternative diet.  By
21 being denied a Kosher diet, Plaintiff contends that he is forced to choose between attempting to obey
22 the tenets of his religion and suffering from malnutrition, or violating his religious beliefs.

23     On September 19, 2011, Plaintiff asked Defendant Albitre to be switched from the vegetarian
24 diet to the Kosher diet because he believed that the Kosher diet was a more suitable alternative.
25 Defendant Albitre responded on September 23, 2011, by sending Plaintiff a request form to be
26 removed from the religious diet program.

27     On September 25, 2011, Plaintiff sent the request to Defendant Smith for supervisor review,
28 explaining that he wanted to switch diets, not be removed from the program.  Defendant Smith

responded on September 27, 2011, explaining that only a Rabbi could approve a request for a Kosher diet.

On November 2, 2011, Plaintiff submitted an inmate appeal alleging religious discrimination and favoritism towards Jewish inmates. On December 22, 2011, Defendant Albitre denied the appeal at the First Level, stating that he could not approve a request for a Kosher diet. This denial was reviewed and approved by Defendant Smith.

On April 17, 2012, Plaintiff submitted a request for interview to Defendant Carron, a Rabbi. On May 17, 2012, Rabbi Carron denied the request for a Kosher diet because Plaintiff was not Jewish, and a Rabbi cannot approve non-Jews for the Kosher diet.

*Holy Books of Creativity*

Next, Plaintiff alleges that Defendants have burdened the practice of his religion by placing Holy Books of Creativity on the list of books banned at CSP in an effort to keep inmates from learning about, and practicing, Creativity. He contends that enforcement of this ban "can and will" interfere with his ability to fully and properly practice his religion. Defendants allow the Holy Books of many other religions to enter CSP, and freely distribute Holy Books of traditional religions.

On August 11, 2010, Plaintiff submitted a request for religious accommodation to the warden, but the request was ignored. Plaintiff submitted another appeal on March 22, 2011, relating to the general denial of his right to practice his religion. Plaintiff was told that he could request religious recognition through the Community Resource Manager, i.e., Defendant Smith.

*Recognition of Creativity*

On May 19, 2011, and June 20, 2011, Plaintiff submitted requests for interviews to Defendant Smith, requesting that his religion be recognized and approved at CSP. The requests were never acknowledged.

On July 3, 2011, Plaintiff submitted an inmate appeal relating to his attempts to have his religion recognized.

Plaintiff submitted a request for interview to Defendant Albitre on July 5, 2011, and explained the situation. Defendant Albitre did not respond to the request.

1    Plaintiff was eventually able to file the appeal, and he was interviewed by Defendant Albitre
2    on August 29, 2011. He told Plaintiff that he was not authorized to approve a religion himself, but
3    would present the issue to the Religious Review Committee for discussion. Defendant Albitre
4    demanded that Plaintiff provide the name of an outside representative. Plaintiff provided him with
5    information for a minister in Riverside, California.

6    On August 29, 2011, Defendant Albitre denied the appeal, falsely claiming that Plaintiff was
7    provided with an opportunity to provide evidence, but that he only provided contact information.
8    Defendant Albitre also stated that he contacted the outside representative many times, but did not
9    receive a response. Defendant Albitre was therefore forced to perform research on the internet,
10   where he found that the religion was "racially motivated" and did not provide any religious qualities.
11   ECF No. 41, at 27. The denial was reviewed and approved by Defendant Smith.

12   On September 23, 2011, Plaintiff submitted the appeal for Second Level review. The appeal
13   was denied on October 20, 2011.

14   On October 26, 2011, Plaintiff submitted the appeal for Third Level review and attached
15   evidence. The appeal was denied on January 13, 2012.

16   Based on these allegations, Plaintiff alleges violations of the First Amendment (freedom of
17   speech, the Establishment Clause and the Free Exercise Clause), Fourteenth Amendment (equal
18   protection), RLUIPA and Article I, Sections 1, 2(a), 4, 4(b), 7(a), 31(a) of the California
19   Constitution. He seeks injunctive and declaratory relief, as well as monetary damages.

20   **C.   DISCUSSION**

21       1.   <u>Incorporation of Facts in Previous Complaints</u>

22   Plaintiff states that he includes "all allegations made in his original complaint and First
23   Amended Complaint and the Exhibits which were submitted with these Complaints as if they were
24   included with this Second Amended Complaint." ECF No. 41, at 37. However, the Second
25   Amended Complaint supercedes Plaintiff's previous complaints, and the Court may not look to his
26   prior complaints. <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc). As
27   explained in Local Rule 220, an amended complaint must be "complete in itself without reference to
28   the prior or superceded pleading." Local Rule 220.

### 2. Title 15 and DOM

Plaintiff seeks to impose liability based on the violation of Title 15 prison regulations and the Department Operations Manual ("DOM") for the confiscation of his property. However, the Court is unaware of any authority for the proposition that there exists a private right of action available to Plaintiff for violation of Title 15 regulations or the DOM, and there exists ample district court decisions holding to the contrary. E.g., Vasquez v. Tate, 2012 WL 6738167, at *9 (E.D.Cal. 2012); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D.Cal. 2012); Meredith v. Overley, 2012 WL 3764029, at *4 (E.D.Cal. 2012); Parra v. Hernandez, 2009 WL 3818376, at *8 (S.D.Cal. 2009); Davis v. Kissinger, 2009 WL 256574, at *12 n.4 (E.D.Cal. 2009).

Plaintiff therefore cannot state a claim under Title 15 or the DOM and these claims shall be dismissed with prejudice.

### 3. Defendants CDCR and CSP

Plaintiff names CDCR and CSP as Defendants. However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state. Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted). While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," Wolfson, 616 F.3d at 1065-66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900 (1984); Buckwalter v. Nevada Bd. of Medical Examiners, 678 F.3d 737, 740 n.1 (9th Cir. 2012). ).

Thus, Plaintiff may not maintain a claim against CDCR or CSP, which is part of CDCR.

### 4. Claims for Injunctive and Declaratory Relief

Plaintiff's claims for injunctive and declaratory relief are moot because he has since been transferred from CSP, and he is no longer subject to the prison policies he challenges. See Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir.2012) (a prisoner's claims for injunctive and declaratory relief relating to prison conditions are rendered moot by his transfer to another facility).

### 5. RLUIPA

Plaintiff may not recover damages for claims under RLUIPA against any defendant in either an official or individual capacity, and may only seek equitable relief against a defendant in his

8

official capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir.2014). As explained above, however, Plaintiff's claims for injunctive and declaratory relief are now moot in light of his transfer to California State Prison- Sacramento.

Plaintiff is therefore unable to state a RLUIPA claim.

6.   California Constitutional Claims

Plaintiff asserts claims under numerous sections of the California Constitution.

He first seeks to state a claim under Article I, Section 1, which states that "[a]ll people are by nature free and independent and have inalienable rights. Among these rights are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Plaintiff states that Defendants have violated his inalienable rights under Article I, Section 1, and also characterizes the section as the "Establishment Clause." ECF No. 41, at 33. Section 1 does not speak to religion, however, and Plaintiff's vague assertion of a violation of his inalienable rights is insufficient to state a claim. See Bishop v. Harrington, 2013 WL 1962684, at *4 (E.D.Cal. 2013).

Plaintiff also cites Article I, Section 4(b), though there is no such section.

Additionally, there is no implied right to seek damages for constitutional torts under Sections 2(a) and 7(a). Creighton v. City of Livingston, 628 F.Sup.2d 1199, 1218-19 (E.D.Cal. 2009); Katzberg v. Regents of the University of California, 29 Cal.4th 300, 329 (2002). As Plaintiff's action is limited to damages for the reasons discussed above, he cannot state a claim under these sections.

Moreover, even assuming that any of the cited sections support a claim for damages, Plaintiff does not allege compliance with the California Tort Claims Act ("CTCA"). See Cal. Gov't.Code § 900 et seq. The CTCA requires tort claims against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. See Cal. Gov't.Code §§ 905.2, 910, 911.2, 945.4, 950-950.6. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995). The CTCA requirements apply to state constitutional claims. See City

of Monterey v. Del Monte Dunes at Monterey Ltd., 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) ("There can be no doubt that claims brought pursuant to § 1983 sound in tort.")

      7.      Cognizable Claims

Pursuant to the Ninth Circuit's order and the above discussion, Plaintiff's Second Amendment Complaint, liberally construed, states First Amendment, Establishment Clause and equal protection claims against Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz and Rabbi Carron.[3]

The Ninth Circuit did not, however, express an opinion as to whether Creativity constitutes a religion.

**D.    FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court finds that this action SHALL PROCEED on Plaintiff's First Amendment, Establishment Clause and equal protection claims against Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz and Rabbi Carron. It does not state any other cognizable claims and Defendants CDCR and CSP are DISMISSED from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **February 24, 2016**                  /s/ Dennis L. Beck
                                                                                   UNITED STATES MAGISTRATE JUDGE

---

[3] The Court has the recalled service documents and will forward the documents to the United States Marshal for service on the appropriate Defendants if and when these Findings and Recommendations are adopted. Plaintiff will need to complete service documents for Defendant Carron, however, and will be instructed on completion upon adoption.