# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY TODD,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND REHABILITATION,<br>et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:12-cv-01003-DAD-BAM PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT<br>(Doc. 61)<br><br>FOURTEEN-DAY OBJECTION DEADLINE |

Plaintiff Michael Anthony Todd, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 21, 2012. This action currently proceeds on Plaintiff's First Amendment, Establishment Clause and equal protection claims against Defendants Albitre, Smith-Robicheaux (sued as "Smith"), Indermill, Mayo, Mussellman, Ruiz and Rabbi Carron as set forth in the second amended complaint. Plaintiff's allegations concern the asserted denial of his rights arising out of his membership in, and practice of, Creativity as a religion.

**I.  Procedural Background**

On March 26, 2013, the Court screened Plaintiff's first amended complaint, and recommended dismissal of Plaintiff's claim regarding rejection of incoming mail without prejudice and dismissal of Plaintiff's remaining claims with prejudice for failure to state a claim

upon which relief could be granted. (Doc. 15.) On April 9, 2013, the District Court adopted the recommendations, and dismissed Plaintiff's claim regarding rejection of incoming mail without prejudice to re-filing in a separate, new action and dismissed all of Plaintiff's remaining claims with prejudice for failure to state a claim upon which relief may be granted. (Doc. 17.) Plaintiff appealed the dismissal. (Doc. 19.)

On August 27, 2015, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") affirmed in part, reversed in part and remanded the action to this Court. Specifically, the Ninth Circuit determined that the Court prematurely dismissed Plaintiff's First Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Establishment Clause and equal protection claims because Plaintiff's allegations, liberally construed, were sufficient to warrant ordering defendants to file an answer. However, the Ninth Circuit explicitly stated that it expressed no opinion as to whether Creativity constituted a religion. (Doc. 25.) The mandate issued on September 21, 2015. (Doc. 26.)

Following issuance of the mandate and remand, this Court vacated the entry of judgment, reopened the action and directed Plaintiff to return service documents for eight defendants. On December 4, 2015, the Court directed the United States Marshal to serve these defendants. However, the Court subsequently vacated the service order pending rescreening of the First Amended Complaint. Upon rescreening, the Court issued Findings and Recommendations on January 7, 2016, that the action should proceed on Plaintiff's First Amendment, RLUIPA, Establishment Clause and equal protection claims against Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz and Rabbi John Doe. (Doc. 39.)

During pendency of the Findings and Recommendations, Plaintiff moved for leave to file a second amended complaint. (Doc. 40.) On February 24, 2016, the Court granted the motion for leave to amend, vacated the January 7, 2016 Findings and Recommendations and filed Plaintiff's second amended complaint. (Docs. 42, 43.)

The Court screened the second amended complaint, and on March 21, 2016, the District Court ordered that this action proceed on Plaintiff's First Amendment, Establishment Clause and equal protection claims against Defendants Albitre, Smith, Indermill, Mayo, Mussellman, Ruiz

and Rabbi Carron and dismissed Defendants CDCR and CSP from this action. (Doc. 46.)

On June 20, 2016, following service of the second amended complaint, Defendants Smith-Robicheaux, Ruiz, Mayo and Musselman filed an answer. (Doc. 51.)

On July 28, 2016, Defendants Indermill, Albitre and Carron, who are represented by separate counsel, filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that they are entitled to qualified immunity. Defendants Indermill, Albitre and Carron argue, in part, that they are entitled to qualified immunity on the ground that there is no clearly established law in the Ninth Circuit recognizing Creativity as rooted in religious beliefs. (Doc. 61.) Plaintiff opposed the motion on August 11, 2016, and Defendants replied on August 18, 2016. (Docs. 62, 64.)

The motion is deemed submitted. Local Rule 230(l).

**II.     Relevant Allegations in Second Amended Complaint**

Plaintiff is currently housed at California State Prison, Sacramento. However, the events in the second amended complaint are alleged to have occurred while Plaintiff was housed at California State Prison, Corcoran.

Plaintiff alleges that he is both a member and minister of the "Ecclesia Creatoris" religious organization, which promotes the Creativity religion. Plaintiff asserts that he "sincerely believes in the tenets of Creativity and holds Creativity to be his religion." (Doc. 43, p. 4.) Upon becoming a member, Plaintiff pledged not only "undying loyalty to the White Race," but also to "promote the best interests of the While Race." (Id. at pp. 4-5.) Plaintiff has been teaching the tenets of Creativity to other inmates for fourteen years.

*Confiscation of Religious Material*

On January 24, 2011, Defendants Mayo and Mussellman searched Plaintiff's cell because they, and Defendant Ruiz, noticed flyers taped to the wall of the cell. The flyers were seized and Defendant Ruiz confiscated the material as gang-related, noting the racist nature of the materials. Plaintiff asserted to Defendant Ruiz that the flyers were religious in nature and did not advocate violence or illegal behavior. However, Defendant Ruiz became belligerent and refused to give Plaintiff a receipt for the confiscated material.

3

On the same date, Plaintiff filed an inmate appeal relating to Defendant Ruiz's confiscation of his religious material. The appeal was returned with instructions to provide a description of the confiscated material. Plaintiff resubmitted the appeal. He contends that during adjudication of the appeal, Defendant Ruiz provided falsified information and interfered with the appeal process. The appeal was not processed at the Third Level because the time limits had elapsed.

*Religious Diet*

Plaintiff alleges that Creativity requires a fruitarian diet, which consists of raw organic whole food (fruits, vegetables, nuts and some grains), along with clean, pure, unpolluted water (or filtered or distilled water as a last resort) or freshly-squeezed juice from organic fruits and vegetables. Plaintiff contends that Defendants have denied him the ability to practice this diet, informing him that it is not offered by CSP-Corcoran and is not a CDCR-approved religious diet. Although Defendants have offered to place him on a vegetarian diet or the Halal diet, these diets do not meet his dietary needs. Defendants also have refused to place Plaintiff on the Kosher diet because it is only available to Jewish inmates. Plaintiff contends that denying him his religious diet while providing other inmates with their religious diets is discrimination and a violation of his rights.

On February 4, 2010, Plaintiff submitted a request for interview form to Defendant Smith-Robicheaux requested an organic raw food/fruitarian diet in accordance with the tenets of his Creativity religion. Defendant Indermill responded to the request, stating that he had attempted to contact members of Plaintiff's faith group to get details regarding the diet. He stated that he would not consider Plaintiff for a religious diet until he heard back from these people.

Plaintiff later learned that Defendant Indermill had contacted the Creativity Prison Ministries regarding the dietary requirements of the Creativity religion and a representative had responded on July 1, 2008.

On February 18, 2010, Plaintiff submitted a request for interview to Defendant Indermill stating that he had evidence that Creativity Prison Ministries had responded to Defendant Indermill's inquiry. Defendant Indermill did not respond to the request for interview.

On July 4, 2010, Plaintiff submitted an inmate appeal to the religious supervisor,

Defendant Smith-Robicheaux regarding the denial of his religious diet and Defendant Indermill's actions preventing him from a receiving a religious diet.

On October 21, 2010, Plaintiff was interviewed by Defendant Albitre at the informal level of review. Defendant Albitre ignored Plaintiff's complaint against Defendant Indermill and only addressed the dietary issue. Defendant Albitre informed Plaintiff that the requested diet was not approved at CSP-Corcoran and he could not grant the request for a non-approved diet. However, Defendant Albitre placed Plaintiff on the vegetarian diet as a temporary measure while Plaintiff continued his appeal. Plaintiff asserts that the vegetarian diet is the religious alternative diet given to non-Jewish and non-Muslim inmates. Plaintiff alleges that this is discrimination and violates his rights.

Defendant Albitre interviewed Plaintiff a second time during the appeal process and again denied the request for a fruitarian diet. Defendant Smith-Robicheaux reviewed and approved the denial.

*Alternative Religious Diet*

Based on Defendants' refusal to provide the fruitarian diet, Plaintiff attempted to be placed on the Kosher diet as a suitable alternative. Plaintiff alleges, however, that only Jewish inmates are allowed to be placed on the Kosher diet, and the Halal diet is only offered to non-Muslim inmates if the applicant refuses the vegetarian diet and continues to pursue a religious diet. Plaintiff alleges that by being denied the Kosher diet, he is being denied the religious alternative diet that provides some foods that are close to being acceptable.

On September 19, 2011, Plaintiff asked Defendant Albitre to be switched from the vegetarian diet to the Kosher diet because he believed that the Kosher diet was a more suitable alternative. Defendant Albitre responded on September 23, 2011, by sending Plaintiff a request form to be removed from the religious diet program.

On September 25, 2011, Plaintiff sent the request to Defendant Smith for supervisor review, explaining that he wanted to switch diets, not be removed from the program. Defendant Smith responded on September 27, 2011, explaining that only a Rabbi could approve a request for a Kosher diet.

5

On November 2, 2011, Plaintiff submitted an inmate appeal alleging religious discrimination and favoritism towards Jewish inmates. On December 22, 2011, Defendant Albitre denied the appeal at the First Level, stating that he could not approve a request for a Kosher diet. This denial was reviewed and approved by Defendant Smith.

On April 17, 2012, Plaintiff submitted a request for interview to Defendant Carron, a Rabbi. On May 17, 2012, Rabbi Carron denied the request for a Kosher diet because Plaintiff was not Jewish, and a Rabbi cannot approve non-Jews for the Kosher diet.

*Holy Books of Creativity*

Next, Plaintiff alleges that Defendants have burdened the practice of his religion by placing Holy Books of Creativity on the list of books banned at CSP in an effort to keep inmates from learning about, and practicing, Creativity. He contends that enforcement of this ban "can and will" interfere with his ability to fully and properly practice his religion. Defendants allow the Holy Books of many other religions to enter CSP, and freely distribute Holy Books of traditional religions.

On August 11, 2010, Plaintiff submitted a request for religious accommodation to the warden, but the request was ignored. Plaintiff submitted another appeal on March 22, 2011, relating to the general denial of his right to practice his religion. Plaintiff was told that he could request religious recognition through the Community Resource Manager, i.e., Defendant Smith.

*Recognition of Creativity*

On May 19, 2011, and June 20, 2011, Plaintiff submitted requests for interviews to Defendant Smith, requesting that his religion be recognized and approved at CSP. The requests were never acknowledged.

On July 3, 2011, Plaintiff submitted an inmate appeal relating to his attempts to have his religion recognized.

Plaintiff submitted a request for interview to Defendant Albitre on July 5, 2011, and explained the situation. Defendant Albitre did not respond to the request.

Plaintiff was eventually able to file the appeal, and he was interviewed by Defendant Albitre on August 29, 2011. He told Plaintiff that he was not authorized to approve a religion

6

himself, but would present the issue to the Religious Review Committee for discussion. Defendant Albitre demanded that Plaintiff provide the name of an outside representative. Plaintiff provided him with information for a minister in Riverside, California.

On August 29, 2011, Defendant Albitre denied the appeal, falsely claiming that Plaintiff was provided with an opportunity to provide evidence, but that he only provided contact information. Defendant Albitre also stated that he contacted the outside representative many times, but did not receive a response. Defendant Albitre was therefore forced to perform research on the internet, where he found that the religion was "racially motivated" and did not provide any religious qualities. (ECF No. 43, at 27). The denial was reviewed and approved by Defendant Smith.

On September 23, 2011, Plaintiff submitted the appeal for Second Level review. The appeal was denied on October 20, 2011.

On October 26, 2011, Plaintiff submitted the appeal for Third Level review and attached evidence. The appeal was denied on January 13, 2012.

**III.    Defendants' Motion to Dismiss**

**A.    Legal Standard - Qualified Immunity**

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

An officer is entitled to qualified immunity unless (1) the facts that a plaintiff has alleged or shown state a violation of a constitutional right, and (2) the right was "clearly" established at the time of the alleged misconduct. Pearson, 555 U.S. at 232 (discussing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Although often appropriate to analyze in that order, courts have the discretion to

choose which prong to analyze first. Pearson, 555 U.S. at 236 (overruling the sequence of analysis for qualified immunity established in Saucier). If the answer to the first prong is "no," the defendant prevails because there was no violation of a constitutional right. See Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012). If the answer to the first prong is "yes" and the second prong is "no," the defendant is protected by qualified immunity. Id. Even if the plaintiff has alleged violations of a clearly established right, the government official is entitled to qualified immunity if he or she made a reasonable mistake as to what the law requires. See Saucier, 533 U.S. at 205-06; Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006).

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Carroll v. Carman, 135 S.Ct. 348, 350 (2014) (citations omitted). The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir.2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Community House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010) (citing Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. See id.

**B. Discussion**

Defendants argue *inter alia* that they are entitled to qualified immunity because there is no clearly established law in the Ninth Circuit recognizing Creativity as a religion. (Doc. 61, pp. 17-19.) In opposition, Plaintiff contends that Defendants are not entitled to qualified immunity because "Freedom of Religion, Equal Protection under the Law, and separation of Church and State are rights that every reasonable person would be familiar with, as they are guaranteed by the First Amendment." (Doc. 62 at p. 4.)

When considering a defendant's entitlement to qualified immunity, the broad constitutional concepts proposed by Plaintiff are insufficient. The United States Supreme Court has "repeatedly

told courts . . . not to define clearly established law at a high level of generality." Ashcroft v. al–Kidd, 563 U.S. 731, 742 (2011). Instead, the Supreme Court has instructed that the dispositive question is "whether the violative nature of particular conduct is clearly established." Id. This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam ) (quoting Saucier, 533 U.S. at 201).

As Plaintiff admits, this matter arises primarily from Defendants' purported failure to recognize Creativity as a religion. (Doc. 62 at p. 3.) Thus, the Court finds the dispositive inquiry is whether it was clearly established that Creativity invoked constitutionally cognizable religious interests, and Defendants should have recognized Creativity as a religion and relatedly provided Plaintiff with religious meals and allowed him to retain his religious materials.

Neither the Supreme Court nor the Ninth Circuit has addressed the issue of whether Creativity qualifies as a constitutionally cognizable religion. Moreover, the Court has located no district court in this circuit that has decided the question of whether Creativity is a religion. See Birkes v. Mills, No. 03:10–cv–00032–HU, 2011 WL 5117859, at *3-4 (D. Or. Sept. 28, 2011) (applying Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir. 1981) to Church of the Creator and finding Creativity failed to qualify as a religion for purposes of prisoner's First Amendment claims); Prentice v. Nev. Dep't of Corrs., No. 3:09–cv–0627–RCJ–VPC, 2010 WL 4181456, at *3-4 (D. Nev. Oct. 19, 2010) (finding Church of the Creator or Creativity not a religion for purposes of the First Amendment); Conner v. Tilton, No. C 07–4965 MMC (PR), 2009 WL 4642392 (N.D. Cal. Dec. 2, 2009) (Creativity did not qualify as a religion for purposes of First Amendment or RLUIPA); but see Oakden v. Bliesner, No. C 05-2887 MMC PR, 2007 WL 2778788, at *5 (N.D. Cal. Sept. 21, 2007) (at summary judgment stage, court assumed, without deciding, that the Church of the Creator is a religion within the meaning of the First Amendment).

In the absence of binding precedent from the Supreme Court and the Ninth Circuit, the Court has considered other decisional law from the relevant time period, but has found no other circuits or district courts recognizing Creativity as a religion when considering a First Amendment, Establishment Clause or equal protection claim, and many courts have viewed

Creativity as a white supremacist organization.[1]  See, e.g., Gaustad v. Deppisch, 246 Fed.Appx. 392 (7th Cir. 2007) (affirming dismissal of prisoner's claim that he was improperly disciplined for possessing Creativity materials suspected to be gang related); Stanko v. Patton, 568 F.Supp.2d 1061, 1072 (D. Neb. 2008), aff'd, 357 F.Appx. 738 (8th Cir. 2009) (district court tasked by appellate court with determining whether Church of Creator is a religion protected by First Amendment found that prisoner's demands for nuts and fresh fruit, masquerading as a request for "holy meals," was properly denied by Nebraska jail officials because that request was not based upon any religion recognized by the First Amendment); Byrne v. Biser, No. 06-249J, 2007 WL 3120296 (W.D. Pa. Oct. 23, 2007) (dismissing claim challenging denial of Creativity text as containing racially inflammatory materials); see also Barletta v. Quiros, No. 3:10-CV-939 (AVC), 2013 WL 12073470, at *5 (D. Conn. Feb. 21, 2013) (noting that, to date, no court considering a First Amendment claim had recognized Creativity as a religion); but see Deville v. Crowell, No. 08-3076-SAC, 2011 WL 4526772, at *5-6 (D. Kan. Sept. 28, 2011) (assuming, without deciding, that federal prisoner's First Amendment claims based on denial of his request for group services to practice Creativity were actionable; defendants did not challenge whether Creativity was a recognized religion within the meaning of the First Amendment); Fricks v. Upton, No. 5:10-CV-458(MTT), 2011 WL 3156680, at *6 (M.D. Ga. Apr. 14, 2011) report and recommendation adopted, 2011 WL 3107733 (M.D. Ga. July 26, 2011) (expressing reservations regarding plaintiff's First Amendment claims arising out of his contentions that the Church of Creativity is a religion, but permitting plaintiff's claims that he was denied free exercise of his religion, that the defendants retaliated against him for such exercise, and that his religious material was confiscated to go forward on screening).

Plaintiff has not directed this Court to any decisional law finding Creativity to be a religion in the First Amendment context. Instead, Plaintiff relies on Peterson v. Wilmur Commc'n Inc., 205 F.Supp.2d 1014, 1024 (E.D. Wisc. 2002), in which a district court found Creativity qualified as a religion in the context of an employment discrimination claim brought under Title VII of the

---

[1] At least one federal district court has found sufficient allegations to support an inference that Creativity is a religion for purposes of Federal Rule of Civil Procedure 12(b)(6) review.  See Hale v. Federal Bureau of Prisons, 2015 WL 5719649, at *7 (D. Col. Sept. 30, 2015).  However, this decision was rendered after the time period at issue.

10

Civil Rights Act. However, a Title VII claim applies a much broader standard than that employed in the context of the First Amendment, and for that reason is distinguishable. Barletta, 2013 WL 12073470 at *7 n. 2; Prentice, 2010 WL 4181456 at *4 n. 4; Conner, 2009 WL 4642392, at *6 n. 4.

Regardless, the Court need not, at this time, determine whether Creativity is a religion.[2] Even if it were, that characterization was not clearly established at the time of the incidents giving rise to this action between 2008 and 2012. As a result, no reasonable correctional official would have understood that his or her actions violated Plaintiff's constitutional rights. Therefore, the Court will recommend that Defendants' motion to dismiss be granted.

## IV.     Conclusion and Recommendation

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Defendants' motion to dismiss, filed on October 29, 2014, be GRANTED; and
2. Defendants Indermill, Albitre and Carron be DISMISSED from this action based on qualified immunity.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 23, 2017**                    /s/ *Barbara A. McAuliffe*
                                                                      UNITED STATES MAGISTRATE JUDGE

---

[2]  During pendency of the instant motion, Plaintiff filed a motion for an immediate determination by this Court that Creativity is a religion for purposes of First Amendment analysis. (Doc. 66.) It is unnecessary reach this issue in addressing the merits of Defendants' motion to dismiss on the basis of qualified immunity. As discussed, the issue presently before the Court is whether it was clearly established during the relevant time period that Creativity qualified as a constitutionally cognizable religion.