# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY TODD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　Defendants.<br>_____/ | Case No. 1:12-cv-01003-DAD-BAM PC<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR EXTENSIONS OF TIME *NUNC PRO TUNC*<br><br>(ECF Nos. 98, 105)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 93, 99)<br><br>**FOURTEEN-DAY OBJECTION DEADLINE** |

Plaintiff Michael Anthony Todd, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 21, 2012. This action currently proceeds on Plaintiff's First Amendment, Establishment Clause and equal protection claims against Defendants Smith-Robicheaux (sued as "Smith"), Mayo, Musselman, and Ruiz (collectively "Defendants") as set forth in the second amended complaint.[1] Plaintiff's allegations concern the

---

[1] By separate order, Defendants Indermill, Albitre and Carron were dismissed based on qualified immunity grounds. (ECF No. 79.)

asserted denial of his rights arising out of his membership in, and practice of, Creativity as a religion.

Currently before the Court are the following motions: (1) Plaintiff's motion for summary judgment, filed on November 6, 2017; (2) Defendants' motion for a fourteen-day extension of time to file an opposition and cross-motion for summary judgment filed on January 11, 2018; (3) Defendants' opposition and cross-motion for summary judgment filed on January 25, 2018; and (4) Defendants' motion for a fourteen-day extension of time to file a reply to Plaintiff's opposition to Defendants' cross-motion for summary judgment. (ECF Nos. 93, 98, 99 and 105.) Plaintiff opposed Defendants' cross-motion for summary judgment on February 21, 2018.[2] (ECF No. 104). Defendants replied on March 12, 2018. (ECF No. 107.) The motions are deemed submitted. Local Rule 230(l).

For the reasons that follow, the Court recommends that Defendants' motions for extensions of time be granted, Defendants' motion for summary judgment be granted in part on qualified immunity grounds and Plaintiff's motion for summary judgment be denied.

**I.     Defendants' Motions for Extensions of Time**

      **A.     Extension of Time to Respond to Plaintiff's Motion for Summary Judgment and File Cross-Motion**

On December 13, 2017, Defendants filed a motion requesting an extension of time to respond to Plaintiff's motion for summary and to file a cross-motion for summary judgment. (ECF No. 94.) The Court granted the request on December 18, 2017. (ECF No. 95.) Plaintiff opposed the request for an extension of time and requested reconsideration by the District Court judge. (ECF Nos. 96, 97.) On July 18, 2018, the District Court judge denied Plaintiff's request for reconsideration. (ECF No. 109.)

On January 11, 2018, during pendency of the request for reconsideration, Defendants filed a motion for a fourteen-day extension of time to respond to Plaintiff's motion for summary

---

[2] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 36-1.)

1 judgment and to file a cross-motion for summary judgment. Defendants explained that additional
2 time was needed to prepare the motion for summary judgment in part because the case was more
3 complex than counsel originally believed and additional declarations were necessary. (ECF No.
4 98.) On January 25, 2018, Defendants filed their cross-motion for summary judgment. (ECF No.
5 99.) Plaintiff opposed the motion for a second extension of time on January 30, 2018, and filed his
6 opposition to Defendants' cross-motion for summary judgment on February 21, 2018. (ECF Nos.
7 103, 104.)

Good cause appearing, and in light of both the public policy favoring resolution of the matter on the merits and the fully briefed motions for summary judgment, Defendants' motion for a fourteen-day extension of time to respond to Plaintiff's motion and to file a cross-motion for summary judgment is GRANTED *nunc pro tunc*.

### B. Extension of Time to File Reply to Plaintiff's Opposition

As indicated above, Defendants filed their cross-motion for summary judgment on January 25, 2018, and Plaintiff opposed the motion on February 21, 2018. (ECF Nos. 99, 104.) On February 22, 2018, Defendants filed a motion for a fourteen-day extension of time to reply to Plaintiff's opposition. Defendants' counsel explained that additional time was needed to complete the reply due to a then-pending trial in another matter. (ECF No. 105.) Plaintiff did not oppose the motion and Defendants filed their reply in support of their motion for summary judgment on March 12, 2018. (ECF No. 105.) Good cause appearing, and in the absence of any objection, Defendants' motion for a fourteen-day extension of time to file a reply in support of their motion for summary judgment is GRANTED *nunc pro tunc*.

## II. Relevant Allegations in Second Amended Complaint

Plaintiff is currently housed at California State Prison, Los Angeles County. However, the events in the second amended complaint are alleged to have occurred while Plaintiff was housed at California State Prison, Corcoran.

Plaintiff alleges that he is both a member and minister of the "Ecclesia Creatoris" religious organization, which promotes the Creativity religion. Plaintiff asserts that he "sincerely believes in the tenets of Creativity and holds Creativity to be his religion." (Doc. 43, p. 4.) Upon becoming

3

a member, Plaintiff pledged not only "undying loyalty to the White Race," but also to "promote the best interests of the White Race." (Id. at pp. 4-5.) Plaintiff has been teaching the tenets of Creativity to other inmates for fourteen years.

*Confiscation of Religious Material*

On January 24, 2011, Defendants Mayo and Musselman searched Plaintiff's cell because they, and Defendant Ruiz, noticed flyers taped to the wall of the cell. The flyers were seized and Defendant Ruiz confiscated the material as gang-related, noting the racist nature of the materials. Plaintiff asserted to Defendant Ruiz that the flyers were religious in nature and did not advocate violence or illegal behavior. However, Defendant Ruiz became belligerent and refused to give Plaintiff a receipt for the confiscated material.

On the same date, Plaintiff filed an inmate appeal relating to Defendant Ruiz's confiscation of his religious material. The appeal was returned with instructions to provide a description of the confiscated material. Plaintiff resubmitted the appeal. He contends that during adjudication of the appeal, Defendant Ruiz provided falsified information and interfered with the appeal process. The appeal was not processed at the Third Level because the time limits had elapsed.

*Religious Diet*

Plaintiff alleges that Creativity requires a fruitarian diet, which consists of raw organic whole food (fruits, vegetables, nuts and some grains), along with clean, pure, unpolluted water (or filtered or distilled water as a last resort) or freshly-squeezed juice from organic fruits and vegetables. Plaintiff contends that Defendants have denied him the ability to practice this diet, informing him that it is not offered by CSP-Corcoran and is not a CDCR-approved religious diet. Although Defendants have offered to place him on a vegetarian diet or the Halal diet, these diets do not meet his dietary needs. Defendants also have refused to place Plaintiff on the Kosher diet because it is only available to Jewish inmates. Plaintiff contends that denying him his religious diet while providing other inmates with their religious diets is discrimination and a violation of his rights.

On February 4, 2010, Plaintiff submitted a request for interview form to Defendant Smith-Robicheaux requesting an organic raw food/fruitarian diet in accordance with the tenets of his

Creativity religion. R. Indermill responded to the request, stating that he had attempted to contact members of Plaintiff's faith group to get details regarding the diet and that he would not consider Plaintiff for a religious diet until he heard back from them.

Plaintiff later learned that R. Indermill had contacted the Creativity Prison Ministries regarding the dietary requirements of the Creativity religion and a representative had responded on July 1, 2008.

On February 18, 2010, Plaintiff submitted a request for interview to R. Indermill stating that he had evidence that Creativity Prison Ministries had responded to R. Indermill's inquiry. R. Indermill did not respond to the request for interview.

On July 4, 2010, Plaintiff submitted an inmate appeal to the religious supervisor, Defendant Smith-Robicheaux regarding the denial of his religious diet and R. Indermill's actions preventing him from a receiving a religious diet.

On October 21, 2010, Plaintiff was interviewed by B. Albitre at the informal level of review. B. Albitre ignored Plaintiff's complaint against R. Indermill and only addressed the dietary issue. B. Albitre informed Plaintiff that the requested diet was not approved at CSP-Corcoran and he could not grant the request for a non-approved diet. However, B. Albitre placed Plaintiff on the vegetarian diet as a temporary measure while Plaintiff continued his appeal. Plaintiff asserts that the vegetarian diet is the religious alternative diet given to non-Jewish and non-Muslim inmates. B. Albitre interviewed Plaintiff a second time during the appeal process and again denied the request for a fruitarian diet. Defendant Smith-Robicheaux reviewed and approved the denial.

*Alternative Religious Diet*

Based on Defendants' refusal to provide the fruitarian diet, Plaintiff attempted to be placed on the Kosher diet as a suitable alternative. Plaintiff alleges, however, that only Jewish inmates are allowed to be placed on the Kosher diet, and the Halal diet is only offered to non-Muslim inmates if the applicant refuses the vegetarian diet and continues to pursue a religious diet. Plaintiff alleges that by being denied the Kosher diet, he is being denied the religious alternative diet that provides some foods that are close to being acceptable.

On September 19, 2011, Plaintiff asked B. Albitre to be switched from the vegetarian diet

5

to the Kosher diet because he believed that the Kosher diet was a more suitable alternative. B. Albitre responded on September 23, 2011, by sending Plaintiff a request form to be removed from the religious diet program.

On September 25, 2011, Plaintiff sent the request to Defendant Smith-Robicheaux for supervisor review, explaining that he wanted to switch diets, not be removed from the program. Defendant Smith-Robicheaux responded on September 27, 2011, explaining that only a Rabbi could approve a request for a Kosher diet.

On November 2, 2011, Plaintiff submitted an inmate appeal alleging religious discrimination and favoritism towards Jewish inmates. On December 22, 2011, B. Albitre denied the appeal at the First Level, stating that he could not approve a request for a Kosher diet. This denial was reviewed and approved by Defendant Smith-Robicheaux.

On April 17, 2012, Plaintiff submitted a request for interview to Rabbi Carron. On May 17, 2012, Rabbi Carron denied the request for a Kosher diet because Plaintiff was not Jewish, and a Rabbi cannot approve non-Jews for the Kosher diet.

*Holy Books of Creativity*

Next, Plaintiff alleges that Defendants have burdened the practice of his religion by placing Holy Books of Creativity on the list of books banned at CSP in an effort to keep inmates from learning about, and practicing, Creativity. He contends that enforcement of this ban "can and will" interfere with his ability to fully and properly practice his religion. Defendants allow the Holy Books of many other religions to enter CSP, and freely distribute Holy Books of traditional religions.

On August 11, 2010, Plaintiff submitted a request for religious accommodation to the warden, but the request was ignored. Plaintiff submitted another appeal on March 22, 2011, relating to the general denial of his right to practice his religion. Plaintiff was told that he could request religious recognition through the Community Resource Manager, i.e., Defendant Smith-Robicheaux.

*Recognition of Creativity*

On May 19, 2011, and June 20, 2011, Plaintiff submitted requests for interviews to

6

1 Defendant Smith-Robicheaux, requesting that his religion be recognized and approved at CSP. The
2 requests were never acknowledged.

3 On July 3, 2011, Plaintiff submitted an inmate appeal relating to his attempts to have his
4 religion recognized.

5 Plaintiff submitted a request for interview to B. Albitre on July 5, 2011, and explained the
6 situation. B. Albitre did not respond to the request.

7 Plaintiff was eventually able to file the appeal, and he was interviewed by B. Albitre on
8 August 29, 2011. He told Plaintiff that he was not authorized to approve a religion himself, but
9 would present the issue to the Religious Review Committee for discussion. B. Albitre demanded
10 that Plaintiff provide the name of an outside representative. Plaintiff provided him with information
11 for a minister in Riverside, California.

12 On August 29, 2011, B. Albitre denied the appeal, falsely claiming that Plaintiff was
13 provided with an opportunity to provide evidence, but that he only provided contact information.
14 B. Albitre also stated that he contacted the outside representative many times, but did not receive
15 a response. B. Albitre was therefore forced to perform research on the internet, where he found that
16 the religion was "racially motivated" and did not provide any religious qualities. (ECF No. 43, at
17 27). The denial was reviewed and approved by Defendant Smith-Robicheaux.

18 On September 23, 2011, Plaintiff submitted the appeal for Second Level review. The appeal
19 was denied on October 20, 2011.

20 On October 26, 2011, Plaintiff submitted the appeal for Third Level review and attached
21 evidence. The appeal was denied on January 13, 2012.

22 **III.    Summary Judgment**
23       **A.    Legal Standard**

24 Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and
25 any affidavits provided establish that "there is no genuine dispute as to any material fact and the
26 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one
27 that may affect the outcome of the case under the applicable law.  See Anderson v. Liberty Lobby,
28 Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier

of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In cases where the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (internal quotation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**B.** **Arguments**

    **1.** **Plaintiff's Motion for Summary Judgment**

Plaintiff contends that he is entitled to summary judgment because the undisputed facts demonstrate that defendants denied him rights that are afforded to similarly situated prisoners. Plaintiff asserts that during his incarceration he maintains the right to freely practice his religion, the right to be free from religious discrimination, the right to be provided with a religious diet, and the right to receive and maintain religious literature and books even if those materials contain racist views. Plaintiff asserts that these rights were all clearly established and were provided to inmates "with more traditional religious views, or view that were pro-black and anti-white." (ECF No. 93 at p. 7.) Additionally, Plaintiff claims that he was singled out for disparate treatment because his "religion contains views that are pro-white" and he was targeted for harassment by defendants for exercising his right to free speech "by displaying flyers relating to his religious beliefs in the privacy of his cell." (Id.) Plaintiff also claims that the defendants denied his clearly established rights to requested accommodations for his religion. Plaintiff also concludes that his rights were clearly established at the time and the evidence he provided regarding the "Creativity religion, particularly the 'Introduction to Creativity Religion' packet that he provided the Court, clearly establishes that Creativity is a religion." (Id at p. 8.) Plaintiff contends that he entitled to summary judgment because "it is undisputable that Creativity is a religion" and he was entitled to accommodation of his religious needs. (Id.)

Defendants counter that Plaintiff's motion for summary judgment should be denied because he did not submit a Statement of Undisputed Facts in compliance with Local Rule 260. Engrahm v. Cty. of Colusa, No. 0204CV1290GEBGGH, 2005 WL 3440025 at *1 (E.D. Cal. Dec. 14, 2005) (failure to comply with Local Rule 260 is an appropriate basis for denying a motion for summary judgment). Defendants also counter that Plaintiff's motion should be denied because he has failed to meet his burden as the moving party.

**2.    Defendants' Cross-Motion for Summary Judgment**

Defendants argue that Creativity is not a religion, but a racial hate group that is not entitled to First Amendment protections, Defendants had legitimate penological reasons for denying Plaintiff books, posters and the diet of his choice, the Equal Protection Clause does not require identical treatment, and Defendants did not discriminate against Plaintiff based on his beliefs.

1 Defendants also argue that they are entitled to qualified immunity from liability on Plaintiff's
2 claims because they did not violate clearly established constitutional law.

3 In opposition, Plaintiff forwards several arguments, including that Defendants have
4 "defaulted in responding" to his motion for summary judgment and have refused to comply with
5 his requests for discovery. Plaintiff also argues that there are issues of material fact in dispute and
6 that Defendants are not entitled to qualified immunity because they violated his clearly established
7 rights.

### C. Discussion

As discussed more fully, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's claims in this action. Given that determination, and in the conservation of judicial resources, the Court finds it unnecessary to address the remainder of the arguments raised by the parties in their moving papers.

#### 1. Legal Standard - Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

An officer is entitled to qualified immunity unless (1) the facts that a plaintiff has alleged or shown state a violation of a constitutional right, and (2) the right was "clearly" established at the time of the alleged misconduct. Pearson, 555 U.S. at 232 (discussing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Although often appropriate to analyze in that order, courts have the discretion to choose which prong to analyze first. Pearson, 555 U.S. at 236 (overruling the sequence of analysis for qualified immunity established in Saucier). If the answer to the first prong is "no," the defendant prevails because there was no violation of a constitutional right. See Lacey v. Maricopa County,

693 F.3d 896, 915 (9th Cir. 2012). If the answer to the first prong is "yes" and the second prong is "no," the defendant is protected by qualified immunity. Id. Even if the plaintiff has alleged violations of a clearly established right, the government official is entitled to qualified immunity if he or she made a reasonable mistake as to what the law requires. See Saucier, 533 U.S. at 205-06; Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006).

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Carroll v. Carman, 135 S.Ct. 348, 350 (2014) (citations omitted). The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir.2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Community House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010) (citing Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. See id.

### 2. Analysis

Plaintiff argues that Defendants are not entitled to qualified immunity because the rights to freely practice his religion, to be provided with a religious diet, and to receive and maintain religious literature and books were clearly established. However, when considering a defendant's entitlement to qualified immunity, the broad constitutional concepts proposed by Plaintiff are insufficient. The United States Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." Ashcroft v. al–Kidd, 563 U.S. 731, 742 (2011). Instead, the Supreme Court has instructed that the dispositive question is "whether the violative nature of particular conduct is clearly established." Id. This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (quoting Saucier, 533 U.S. at 201); see also Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002) ("[W]hether the law was clearly established

must be undertaken in light of the specific context of the case, not as a broad general proposition.").

As Plaintiff admits, this matter arises from Defendants' purported failure to recognize Creativity as a religion. (ECF No. 93; ECF No. 104 at p. 12.) Thus, as the Court previously found in dismissing the remaining defendants on qualified immunity grounds, the dispositive inquiry is whether it was clearly established that Creativity invoked constitutionally cognizable religious interests, and that Defendants should have recognized Creativity as a religion and relatedly provided Plaintiff with religious meals and allowed him to retain his religious materials.

Neither the Supreme Court nor the Ninth Circuit has addressed the issue of whether Creativity qualifies as a constitutionally cognizable religion. Moreover, the Court has located no district court in this circuit that has recognized Creativity as a religion. See Birkes v. Mills, No. 03:10–cv–00032–HU, 2011 WL 5117859, at *3-4 (D. Or. Sept. 28, 2011) (applying Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir. 1981) to Church of the Creator and finding Creativity failed to qualify as a religion for purposes of prisoner's First Amendment claims); Prentice v. Nev. Dep't of Corrs., No. 3:09–cv–0627–RCJ–VPC, 2010 WL 4181456, at *3-4 (D. Nev. Oct. 19, 2010) (finding Church of the Creator or Creativity not a religion for purposes of the First Amendment); Conner v. Tilton, No. C 07–4965 MMC (PR), 2009 WL 4642392 (N.D. Cal. Dec. 2, 2009) (Creativity did not qualify as a religion for purposes of First Amendment or RLUIPA); but see Oakden v. Bliesner, No. C 05-2887 MMC PR, 2007 WL 2778788, at *5 (N.D. Cal. Sept. 21, 2007) (at summary judgment stage, court assumed, without deciding, that the Church of the Creator is a religion within the meaning of the First Amendment).

In the absence of binding precedent from the Supreme Court and the Ninth Circuit, the Court has considered other decisional law from the relevant time period, but has found no other circuits or district courts affirmatively recognizing Creativity as a religion when considering a First Amendment, Establishment Clause or equal protection claim, and many courts have viewed Creativity as a white supremacist organization.[3] See, e.g., Gaustad v. Deppisch, 246 Fed.Appx.

---

[3] The only case to find that Creativity qualified as a religion was Peterson v. Wilmur Commc'n Inc., 205 F.Supp.2d 1014, 1024 (E.D. Wisc. 2002). In that case, a district court found Creativity qualified as a religion in the context of an employment discrimination claim brought under Title VII of the Civil Rights Act. However, a Title VII claim applies a much broader standard than that employed in the context of the First Amendment or any other constitutional claim involving a prisoner, and for that reason is distinguishable. Barletta v. Quiros, No. 3:10-CV-939

12

1  392 (7th Cir. 2007) (affirming dismissal of prisoner's claim that he was improperly disciplined for
2  possessing Creativity materials suspected to be gang related); Stanko v. Patton, 568 F.Supp.2d
3  1061, 1072 (D. Neb. 2008), aff'd, 357 Fed.Appx. 738 (8th Cir. 2009) (district court tasked by
4  appellate court with determining whether Church of Creator is a religion protected by First
5  Amendment found that prisoner's demands for nuts and fresh fruit, masquerading as a request for
6  "holy meals," was properly denied by Nebraska jail officials because that request was not based
7  upon any religion recognized by the First Amendment); Byrnes v. Biser, No. 06-249J, 2007 WL
8  3120296 (W.D. Pa. Oct. 23, 2007) (dismissing claim challenging denial of Creativity text as
9  containing racially inflammatory materials); see also Barletta v. Quiros, No. 3:10-CV-939 (AVC),
10 2013 WL 12073470, at *5 (D. Conn. Feb. 21, 2013) (noting that, to date, no court considering a
11 First Amendment claim had recognized Creativity as a religion); but see Deville v. Crowell, No.
12 08-3076-SAC, 2011 WL 4526772, at *5-6 (D. Kan. Sept. 28, 2011) (assuming, without deciding,
13 that federal prisoner's First Amendment claims based on denial of his request for group services to
14 practice Creativity were actionable; defendants did not challenge whether Creativity was a
15 recognized religion within the meaning of the First Amendment); Fricks v. Upton, No. 5:10-CV-
16 458(MTT), 2011 WL 3156680, at *6 (M.D. Ga. Apr. 14, 2011) report and recommendation
17 adopted, 2011 WL 3107733 (M.D. Ga. July 26, 2011) (expressing reservations regarding plaintiff's
18 First Amendment claims arising out of his contentions that the Church of Creativity is a religion,
19 but permitting plaintiff's claims that he was denied free exercise of his religion, that the defendants
20 retaliated against him for such exercise, and that his religious material was confiscated to go
21 forward on screening).

22    Plaintiff has not directed this Court to any decisional law finding Creativity to be a religion
23 in the First Amendment or Equal Protection context. The Court finds that at the time of the
24 incidents giving rise to this action between 2008 and 2012, Creativity was not clearly established
25 as a religion. As a result, no reasonable correctional official would have understood that his or her
26 actions violated Plaintiff's constitutional rights. Therefore, the Court will recommend that

---

(AVC), 2013 WL 12073470, at *7 n. 2 (D. Conn. Feb. 21, 2013); Prentice, 2010 WL 4181456 at *4 n. 4; Conner, 2009 WL 4642392, at *6 n. 4.

13

1 Defendants' cross-motion for summary judgment be granted on qualified immunity grounds. 2 Given this recommendation, and as indicated above, it is unnecessary to reach of the merits of the 3 underlying action or address the remaining issues raised in the cross-motions for summary 4 judgment filed by the parties.

**IV.     Conclusion and Recommendation**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

7. Defendants' motion for summary, filed on January 25, 2018, be GRANTED IN PART on qualified immunity grounds;

9. Plaintiff's cross-motion for summary judgment be DENIED; and

10. Summary judgment be entered in favor of Defendants Smith-Robicheaux (sued as "Smith"), Mayo, Musselman, and Ruiz and against Plaintiff Michael Anthony Todd.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **August 15, 2018**                    /s/ *Barbara A. McAuliffe*            
                                                              UNITED STATES MAGISTRATE JUDGE